UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DONNA S. MEREDITH,
               *Plaintiff-Appellee,*

v.

MAMSI INSURANCE RESOURCES, INCORPORATED, d/b/a MAMSI Life and Health Insurance Company,
               *Defendant-Appellant.*

No. 01-2188

Appeal from the United States District Court
for the Southern District of West Virginia, at Bluefield.
David A. Faber, District Judge.
(CA-99-1015-1)

Argued: April 2, 2002

Decided: June 4, 2002

Before WILKINSON, Chief Judge, KING, Circuit Judge, and
HAMILTON, Senior Circuit Judge.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** James Carson Stebbins, HUDDLESTON, BOLEN, BEATTY, PORTER & COPEN, L.L.P., Charleston, West Virginia, for Appellant. William Bernard Flanigan, SANDERS, AUSTIN, PRUDICH & FLANIGAN, Princeton, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

This is an action under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461, in which Donna Meredith (Meredith) challenged the denial of health care benefits to cover costs associated with the surgical implantation of metal posts into her mandible, *i.e.*, endosseous implants (Endosseous Implants), which mandible had been newly reconstructed using a bone graft from her hip. *Id.* at § 1132(a)(1)(B). The record is undisputed that the reconstruction of Meredith's mandible was medically necessary to treat a degenerative condition in the mandibular bones in her face. The record is also undisputed that the Endosseous Implants were medically necessary to prevent the pathological fracture of Meredith's newly reconstructed mandible, to stimulate the apposition of bone, and to allow her to open and close her mouth in order to intake food normally.

The district court granted summary judgment in favor of Meredith. MAMSI Life and Health Insurance Company (MAMSI), the defendant in this action,[1] filed the present appeal. For reasons that follow, we affirm.

## I.

Meredith has a degenerative condition that causes severe bone atrophy of her mandibular bones, which in turn causes her facial struc-

---

[1]Meredith formally brought the present action against "MAMSI Insurance Resources, Inc. d/b/a MAMSI Life and Health Insurance Company." MAMSI points out and the record supports that MAMSI is the legal entity that issued the policy in question, and therefore, should be treated as the proper defendant/appellant in this action. According to MAMSI's opening brief, MAMSI Insurance Resources, Inc. does not even sell health or other insurance policies.

tures to collapse.[2] The collapsing of her facial structures seriously interfered with her ability to intake food normally. Meredith is a participant under a group health plan (the Plan) issued by MAMSI. All parties agree that the Plan is subject to ERISA.

Of relevance in the present appeal, on October 29, 1996, Meredith's oral surgeon, Dr. John Gregg (Dr. Gregg), sought preauthorization under the Plan for two surgical procedures in order to treat Meredith's degenerative condition: (1) reconstruction of her mandible using a bone graft from her hip (the Bone Graft); and (2) the Endosseous Implants. MAMSI initially denied coverage for both procedures.[3] MAMSI denied coverage for the Endosseous Implants based upon a specific exclusion in the Plan for "Dental Implants." (J.A. 37).

In order to put the remainder of the chronology of events relevant to this appeal in proper context, we must first set forth the relevant language of the Plan. The Coverages Section of the Plan provides coverage for health care services "provided by a Physician or Health Care Practitioner received in a Provider's office . . . or Institution, which are Medically Necessary for treatment of an Injury or Sickness . . . ." (J.A. 33). The Exclusions Section of the Plan, specifically Exclusion 25, provides that the Plan does not cover "Dental care, *except as related to adjunctive dental care*, (see Sub-Section B- Professional Services of the [Coverages Section of the Plan])" (J.A. 37) (emphasis added). Sub-Section B- Professional Services of the Coverages Section of the Plan provides in relevant part:

> Services provided by a Physician or other licensed and qualified health care practitioner received in a Provider's office or Institution, *which are Medically Necessary for treatment of adjunctive dental care*, which means: 1) dental care that is Medically Necessary in the treatment of a covered medical condition, is an integral part of the treatment of such

---

[2]Because this case is on appeal from the granting of summary judgment, we view all facts and reasonable inferences therefrom in the light most favorable to MAMSI as the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

[3]MAMSI subsequently agreed to cover the Bone Graft. Thus, this appeal does not present a coverage issue with respect to the Bone Graft.

medical condition, and is essential to the control of the primary medical condition . . . .

(J.A. 33) (emphasis added).[4] Paragraph B.3 of the Coverages Section of the Plan is qualified by the following language found immediately under the title to the Coverages Section of the Plan:

> *Subject to all other provisions of this [Plan]*, the Company will pay the applicable Percentage Payable of the Usual, Customary and Reasonable Charges, but not to exceed Lifetime Maximum Benefit or Limits, if any, for the following Health Services for Members, provided: the expense is Medically Necessary; and the expense is incurred and the service is rendered while the Member is insured for this benefit or while covered under the Extension of Benefits provision.

(J.A. 32) (emphasis added). Because Paragraph B.3 of the Coverages Section of the Plan is subject to all other provisions of the Plan, Exclusion 26 of the Plan takes away part of the coverage provided in that paragraph by expressly excluding coverage for "Dental Implants." (J.A. 37). Notably, the term "Dental Implants" is not defined in the Plan.

Returning to the chronology of events relevant to this appeal, by letter dated February 13, 1997, Dr. Gregg sought reconsideration of MAMSI's denial of coverage for the Endosseous Implants. In the letter, Dr. Gregg clarified that the primary purposes of the Endosseous Implants were to prevent the pathologic fracture of Meredith's mandible and to permit her to open and close her mouth for normal food intake. Dr. Gregg also clarified that such implantation would not be done for cosmetic or dental purposes.

On March 17, 1997, MAMSI agreed to cover the Bone Graft. However, MAMSI continued to deny coverage for the Endosseous Implants. At some time thereafter, Meredith's dental physician, Dr. E. Lynn Veneri (Dr. Veneri), wrote the following in a letter to MAMSI

---

[4]From this point forward, we will refer to this quoted language as Paragraph B.3 of the Coverages Section of the Plan.

in support of Meredith's claim for coverage regarding the Endosseous Implants:

> There was severe bony atrophy to the extent that pathological fracture was of great concern. IT WAS RECOMMENDED THAT THE PATIENT BE TREATED WITH A MANDIBULAR FIXED IMPLANT PROSTHESIS. THERE HAS BEEN RECENT STUDIES RECOMMENDING THIS TREATMENT SINCE IT HAS BEEN OBSERVED THAT THIS TYPE OF PROSTHESIS STIMULATES THE APPOSITION OF BONE LESSENING THE POTENTIAL OF FRACTURE. It is my opinion the treatment of this individual's clinical situation should not be treated with a removable prosthesis which would further cause bone loss exposing this patient to a fracture that would be questionable in my opinion if it could be repaired. I would like to emphasize that my opinion is based solely on my concern due to her age, severe bone loss and ability to masticate her food.

(J.A. 101).

Meredith underwent both procedures and submitted a claim for coverage of both procedures.[5] MAMSI paid the claim for the Bone Graft as agreed, but continued to deny coverage for the Endosseous Implants.

Meredith filed the present denial of coverage action in state court. MAMSI removed the case to the United States District Court for the Southern District of West Virginia on the basis of federal question jurisdiction, *i.e.*, ERISA. Following discovery, the parties filed cross-motions for summary judgment.

---

[5]At the time of her surgery, Meredith did not have any natural teeth. She had been wearing dentures. However, the bone atrophy in her face had grown so severe that her dentures had almost no support and a significant risk existed that when eating, Meredith's remaining facial bones would fracture.

In its motion for summary judgment, MAMSI insisted that the Endosseous Implants are "Dental Implants," and thus are expressly excluded under Exclusion 26 of the Plan. In support, MAMSI offered the deposition testimony of its Dental Director, Dr. Lee Shapiro (Dr. Shapiro), in which Dr. Shapiro relied upon the following definition of "endosseous implants" from Dorland's Illustrated Medical Dictionary:

> A dental implant, usually of metal, or less commonly, of ceramic or polymeric material, consisting of a blade, screw, pin or vent, which is inserted into the jaw bone through the alveolar or basal bone, either directly or through the root canal in the apex of a tooth, with a post protruding through mucoperiosteum into the oral cavity to serve as an abutment for dentures or orthodontic appliances, or to serve in fracture fixation.

*Dorland's Illustrated Medical Dictionary* 827 (28th ed. 1994). According to an affidavit given by Dr. Shapiro, "'Endosseous implants' are 'dental implants' within the common usage of that term." (J.A. 131). MAMSI also relied upon descriptive materials provided by Nobel Biocare/Branemark, the manufacturer of the Endosseous Implants used in Meredith's surgery, which descriptive materials indicate that the implants are designed as replacements for the root portions of missing natural teeth and can serve as anchors for replacement teeth. In her motion for summary judgment, Meredith primarily relied upon the two letters written by Dr. Gregg and the single letter written by Dr. Veneri that were sent to MAMSI.

Because the Plan did not vest MAMSI with discretionary authority to interpret the Plan's terms in making coverage decisions, the district court reviewed MAMSI's denial of Meredith's claim for coverage of the Endosseous Implants *de novo*. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) ("[A] denial of benefits . . . is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."). All parties agree that this was the proper standard of review.

Reviewing MAMSI'S denial of Meredith's claim *de novo*, the district court granted summary judgment in favor of Meredith for the following reasons:

The court believes that plaintiff's condition comes squarely within the definition of "adjunctive dental care" within the policy. Adjunctive dental care is that which is "medically necessary in the treatment of a covered medical condition, is an integral part of the treatment of such medical condition, and is essential to the control of the primary medical condition." See paragraph B.3 of the coverages section of the policy.

Here, the medical evidence establishes that plaintiff has a degenerative condition of the jaw causing her facial structures to collapse and interfering with her ability to chew and intake food normally. There was significant danger that her jaw bones would break if the condition were not corrected. The accepted treatment is a bone graft accompanied by implants to prevent fracture and permit normal food intake. Thus, the devices, while technically falling within the definition of implants, are designed to correct the underlying medical condition — deterioration of the bones of the jaw. The evidence of record establishes that the implants are an integral part of the treatment of plaintiff's condition, are medically necessary and essential to control of the condition.

(J.A. 180-81). Thus, the district court granted Meredith's motion for summary judgment, denied MAMSI's cross-motion for summary judgment, and entered judgment in favor of Meredith "in the sum of $7,715.00, interest and costs." (J.A. 182).

MAMSI timely noted the present appeal. On appeal, MAMSI contends the district court erroneously concluded that Exclusion 26 did not apply.

## II.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "We review a grant of summary

judgment *de novo*, applying the same standard as the district court."
*Baber v. Hospital Corp. of Am.*, 977 F.2d 872, 874 (4th Cir. 1992).
In so doing, we view all facts and reasonable inferences therefrom in
the light most favorable to the nonmoving party. *Matsushita Elec.
Indus. Co.*, 475 U.S. at 587-88.

### III.

On appeal, MAMSI does not take issue with the district court's
conclusion that surgical implantation of the Endosseous Implants was
medically necessary to treat Meredith's degenerative condition. None-
theless, MAMSI contends that the Endosseous Implants are "Dental
Implants," and therefore, excluded from coverage pursuant to Exclu-
sion 26 of the Plan. Cutting to the heart of the matter, the only issue
on appeal is whether, viewing the evidence in the light most favorable
to MAMSI, a reasonable trier of fact could only conclude that the
Endosseous Implants that were surgically implanted into Meredith's
mandible were not "Dental Implants" within the meaning of Exclu-
sion 26. *Tester v. Reliance Std. Life Ins. Co.*, 228 F.3d 372, 375 (4th
Cir. 2000) (declaring that "ERISA plans are contractual documents,
and established principles of contract and trust law govern their inter-
pretation") (internal quotation marks omitted).

Viewing the evidence in the light most favorable to MAMSI, we
hold that a reasonable trier of fact could only conclude that the
Endosseous Implants that were surgically implanted into Meredith's
mandible were not "Dental Implants" within the meaning of Exclu-
sion 26. Meredith's treating physicians, Dr. Gregg and Dr. Veneri,
unequivocally stated that the only purposes for the Endosseous
Implants with respect to Meredith were medical as opposed to dental
in nature. Specifically, the purposes identified were to prevent frac-
ture of Meredith's newly reconstructed mandible, to stimulate the
apposition of bone, and to allow her to open and close her mouth so
that she could intake food normally.

No evidence in the record refutes the opinions of these physicians.
Notably, Dr. Shapiro's statement in his affidavit that "'Endosseous
implants' are 'dental implants' within the common usage of that
term," (J.A. 131), is not inconsistent with the opinions of these physi-
cians as to why Meredith needed the Endosseous Implants. As is

obvious from simply reading their letters, their respective uses of the term "Endosseous Implants" were not within the common usage of the term "Dental Implants" as that term is medically defined. Moreover, because Meredith's treating physicians did not use the term "Endosseous Implants" within the common usage of that term, the medical dictionary definition relied upon by Dr. Shapiro is also inapposite. That definition applies only when Endosseous Implants are implanted "to serve as an abutment for dentures or orthodontic appliances, or to serve in fracture fixation." *Dorland's Illustrated Medical Dictionary* 827 (28th ed. 1994). Meredith's treating physicians did not cite any of these purposes as even one of the purposes for which Meredith received the Endosseous Implants. Finally, for the same reason, the fact that the manufacturer designed the Endosseous Implants that were surgically implanted into Meredith's mandible as replacements for the root portions of missing natural teeth is of no moment. The record simply does not support that Meredith received these implants for such purpose.[6]

In conclusion, we affirm the district court's grant of summary judgment in favor of Meredith on reasoning slightly different than the district court.

*AFFIRMED*

---

[6]To the extent the district court concluded that the Endosseous Implants that were surgically implanted into Meredith's mandible technically fell within the meaning of "Dental Implants" as found in Exclusion 26, we reject such a conclusion. As we have explained, under the undisputed evidence in this case, the Endosseous Implants that were surgically implanted into Meredith's mandible were not "Dental Implants" as that term is used in Exclusion 26.