# UNITED STATES COURT OF APPEALS

UNPUBLISHED

## FOR THE FOURTH CIRCUIT

JOHN S. CARR,

*Plaintiff-Appellant,*

v.

PHILIPS ELECTRONICS NORTH AMERICA CORPORATION, d/b/a Philips Lighting Company,

*Defendant-Appellee.*

No. 01-2510

Appeal from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Irene M. Keeley, Chief District Judge.
(CA-00-215-1)

Argued: June 4, 2002

Decided: July 19, 2002

Before WILKINSON, Chief Judge, WILKINS, Circuit Judge,
and Joseph R. GOODWIN, United States District Judge for the
Southern District of West Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Robert Milton Bastress, Jr., Morgantown, West Virginia, for Appellant. Larry Joseph Rector, STEPTOE & JOHNSON, P.L.L.C., Clarksburg, West Virginia, for Appellee. **ON BRIEF:** Cynthia B. Jones, STEPTOE & JOHNSON, P.L.L.C., Clarksburg, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

When Paul Helmick, a maintenance machinist at Philips Lighting Company (Philips), went on disability leave, another Philips employee, John Carr, replaced him. When Helmick returned to work, Carr applied to be transferred to a job paying 18% less. He also applied for a layoff and for Layoff Income and Benefits (LIB) under Philips's benefits plan (the Plan). Pursuant to its LIB plan, Philips refused his lay off and benefits request because he did not meet the Plan's eligibility requirements. Applying a modified abuse of discretion standard, the district court granted summary judgment. Carr appeals on the grounds that (1) the court should have used a de novo standard to review the plan administrator's decision, (2) the court misinterpreted the Plan's LIB eligibility provisions, and (3) the court erred by refusing to admit extrinsic evidence. For the reasons that follow, we affirm.

### I.

Philips and Local 627 of the International Union of Electronic, Electrical, Technical, Salaried Machine and Furniture Workers, AFL-CIO (the Union) are parties to a Pension and Insurance Agreement (PIA) that outlines various benefits available to "eligible" Philips employees, including LIB benefits. Article IV § 5(a) of the PIA defines eligibility for LIB benefits, and provides that an employee may become eligible in one of two ways. Subsection 1 makes eligible certain employees who are laid off involuntarily through no fault of their own due to lack of work occasioned by "reasons associated with the business . . . ." PIA Art. IV § 5(a)(1). Subsection 2 makes eligible certain employees who, in accordance with the Decrease in Working Force Procedure in the Collective Bargaining Agreement (CBA), elect to be laid off rather than being placed in jobs that would pay them 10% less than their current jobs. PIA Art. IV § 5(a)(2); CBA

§ XI(K-M). The Decrease in Working Force Procedure calls for employees to be laid off "[w]hen there is a definite reduction in the production schedule for a work group or section . . . ." CBA § XI(K).

When Helmick went on disability leave, Carr replaced him. When Helmick returned to work, Philips had to move an employee out of the maintenance department. Carr alleges that, to make room, Philips surveyed workers in the maintenance department in order of seniority to determine if any of them wanted to "bid out" of the department and transfer to an open job in another department. Carr exercised what he believed was his right, as most senior member of the maintenance department, to bid on a truck operator's job paying 18% less than his maintenance department job, even though he could have kept his higher paying job. Philips granted the transfer because Carr was the most senior employee to bid on the truck operator's job.* It refused, however, to grant Carr's layoff request, or to pay him LIB benefits, because his voluntary transfer to the lower-paying job had not been occasioned by a lack of work associated with the business.

Philips's human resource manager informed Carr that

> the Company's position regarding the language pertaining to an employee's ability to elect layoff under Article IV, Section 5.a.2. is that a reduction in force must be in place in order for an employee to elect a layoff under this provision. It is our contention that Article IV Section 5.1 Eligibility defines who is eligible for benefits under the context that a reduction in force is necessitated due to lack of work associated with the business. It is not intended to provide a means for employees to elect layoff when a reduction in force is not in effect.

J.A. 35. Five months later Carr retired and eventually filed this law-

---

*Carr admits that simply bidding into a lower-paying job does not entitle him to elect to be laid off and receive LIB benefits. Appellant's Br. at 23. He may elect to be laid off only if he is placed in a lower-paying job in accordance with the Decrease in Working Force Procedure provided in the CBA. PIA Art. IV § 5(a)(2).

suit against Philips seeking LIB benefits. The district court granted summary judgment to Philips, and Carr now appeals.

## II.

The district court's grant of summary judgment is reviewed de novo. *Ellis v. Metro Life Ins. Co.*, 126 F.3d 228, 232 (4th Cir. 1997). ERISA plans, as contractual documents, are reviewed de novo by the court to determine the degree of discretion afforded to the plan administrator. *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 341 (4th Cir. 2000). This court also reviews de novo the question of whether the district court applied the proper standard of review. *Natural Res. Def. Council, Inc. v. E.P.A.*, 16 F.3d 1395, 1400 (4th Cir. 1993).

## III.

### A.  *Use of the Modified Abuse of Discretion Standard*

When a benefit plan vests an administrator with discretion to determine eligibility for benefits or to construe the terms of the plan, the administrator's actions are reviewed for an abuse of discretion. *Ellis*, 126 F.3d at 232. Otherwise, de novo review applies. *Id.* The district court found that the PIA gives Philips the discretionary authority to determine Carr's eligibility for benefits, but applied a modified abuse of discretion standard to reflect a potential conflict of interest because Philips is both the fiduciary of the beneficiaries and the Plan's insurer. In finding that Philips had discretionary authority, the district court relied on Article I § 2(b) of the PIA:

> [A]n employee who files a claim for correction of any statement furnished to him from the Pension Plan, and who is not willing to accept a decision of the Company after the Company's review of such claim . . . may, within ninety (90) days after he is informed of such decision, request the Union to represent him in discussing the matter further with the Company. The Company's records or the decision regarding eligibility for Disability Pension, as either modified or maintained without change after the review shall be final and conclusive and shall not be subject to further review.

J.A. 163. The district court also relied on provisions in the PIA stating that Philips shall have the sole responsibility for the administration of the benefits plan and pension plan and payment of expenses thereunder.

These provisions do not relate to LIB benefits eligibility determination. Rather, they concern the benefits plan and pension plan. Article IV § 5(a) provides the sole criteria for determining who is an "eligible employee" for LIB benefits, and it does not vest Philips with discretion to make eligibility determinations. Moreover, no provision of the PIA gives Philips the authority to construe disputed or doubtful terms. We find that the proper standard of review was de novo, because "there is no evidence that . . . the administrator has the power to construe uncertain terms or that eligibility determinations are to be given deference." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989).

## B.  *Entitlement to LIB Benefits*

Having determined that the district court should have applied the de novo standard of review, we will now apply that standard. We begin by construing the eligibility provisions found in Article IV § 5(a) of the PIA. This Section provides that:

> 1.   . . . [A]n Eligible Employee is an employee with two (2) or more years of service who is not on disability or leave of absence, who is laid off through no fault of his own for lack of work occasioned by reasons associated with the business (such as changed customer ability and willingness to buy as reflected in adjusted production requirements, changed manufacturing processes, product discontinuance or plant closing), and who has not been recalled to work.

> 2.   Notwithstanding 1. above, when an employee who in accordance with the applicable Decrease in Working Force Procedure, would be placed in a labor grade the maximum keysheet rate for which is more than 10% (10%) lower than the maximum keysheet rate for the labor grade of record in which the employee was assigned on the day six months prior to the placement in question, the employee may elect

> to be laid off. Such employee who otherwise qualifies as an Eligible Employee will not affect his eligibility by his election of layoff.

PIA Art. IV § 5(a). Philips argued, and the district court found, that Carr was not an "eligible employee" under the terms of section 5(a)(1) because he was not "laid off through no fault of his own for lack of work occasioned by reasons associated with the business . . . ." Carr asserts that the district court erred because, notwithstanding section 5(a)(1), he is eligible under section 5(a)(2).

The parties disagree over the meaning of these two sections. When read *in pari materia*, their meaning is clear. A worker with two or more full years of service who is not on disability leave becomes eligible if: (1) he is laid off through no fault of his own for lack of work occasioned by reasons associated with the business, and has not been recalled to work; or (2) if he elects to be laid off because, in accordance with the applicable Decrease in Working Force Procedure in the CBA, he would be placed in a labor grade that pays 10% less than his current job. In other words, section 5(a)(1) provides for eligibility due to *involuntary* lay off under certain conditions, and section 5(a)(2) provides for eligibility due to *voluntary* lay off under certain conditions. While this is the reading that Carr urges, it does not help him. His attempt at voluntary layoff was not "in accordance with the applicable Decrease in Working Force Procedure" as required by section 5(a)(2).

Under Article IV § 5(a)(2) of the PIA, a voluntary layoff election qualifies an employee for LIB benefits only if it was made pursuant to the Decrease in Working Force Procedure. Section XI subsection K of the CBA defines the Decrease in Working Force Procedure; subsection L outlines the operating procedures to be used during a decrease; and subsection M provides how employee assignments will be made thereunder. Subsections L and M provide that, when the decrease procedure would result in an employee being down-graded to a job paying him 10% less than his current job, he instead may elect to be laid off. Subsection K, however, explains that the decrease procedure will be invoked only where "there is a definite reduction in the production schedule for a work group or section . . . ." CBA § XI(K). This clear language supports Philips's contention that an

employee may elect layoff only when there is a lack of work. An employee is not eligible for LIB benefits under section 5(a)(2) unless there was an actual decrease in the work force. PIA Art. IV § 5(a)(2); CBA § XI(K).

Carr cites language from the CBA regarding processing a worker through a decrease when the disabled employee whom he has replaced returns to work. That language, however, comes from subsection M, which specifies how workers will be placed *in the event of a decrease in the work force*. This section does not apply to Carr because he did not replace the disabled Helmick in the context of such a decrease.

Alternatively, Carr argues that, although he could have stayed in his higher-paying job, it was his prerogative as the most senior member in the department to chose to be subjected to the decrease procedure when Helmick returned. However, no Decrease in the Working Force occasioned Carr's election to transfer jobs. CBA § XI(K). While Helmick's return required one person in the department to be placed elsewhere, there was no "reduction in the production schedule" for his work group or section. Therefore, because he neither filled nor left Helmick's job in accordance with the Decrease in Working Force Procedure, Carr's election to be laid off did not render him eligible for LIB benefits under PIA Article IV § 5(a)(2).

## C.   *Extrinsic Evidence*

Carr argues that it was Philips's practice to invoke the decrease procedure and allow workers displaced to 10% lower-paying jobs to elect layoff in situations such as this one, even where the return did not result in a reduction in force. The district court struck some of the evidence he offered to support this contention. Because the evidence was at odds with the unambiguous terms of the CBA and the PIA, striking it was proper. *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 56 (4th Cir. 1992) ("Courts cannot ignore a plan's plain language to award coverage. In the absence of ambiguity, the Court's inquiry is limited to the written terms and conditions set forth in the written plan."). Although normal rules of contract interpretation are applied more loosely in the context of collective bargaining agreements, courts nevertheless will bar extrinsic evidence that is inconsistent

with an unambiguous writing. *Pace v. Honolulu Disposal Serv., Inc.*, 227 F.3d 1150, 1157-58 (9th Cir. 2000); *Brown-Graves Co. v. Cent. States, Southeast & Southwest Areas Pension Fund*, 206 F.3d 680, 683 (6th Cir. 2000) (refusing, where collective bargaining agreement was unambiguous, to consider extrinsic evidence of "informal arrangement" between employer and union). This principle is especially important where, as here, the collective bargaining agreement specifically disavowed supplemental oral agreements. *Pace*, 227 F.3d at 1159. Here, although the CBA provides that the parties can negotiate temporary modifications to the decrease in work force procedure, its terms require that any such modifications must be in writing. The district court properly excluded Carr's extrinsic evidence.

IV.

The district court correctly concluded that the plan administrator had properly denied Carr's application for LIB benefits. We affirm.

*AFFIRMED*