**William J. ADAMS, Plaintiff,**

v.

**LOUISIANA–PACIFIC CORPORATION; ABT Building Products Corporation; Abtco, Inc.; ABT Building Products Corporation Supplemental Benefit Plan # 2; and Retirement Committee for the ABT Building Products Corporation Supplemental Benefit # 2, Defendants.**

**No. 3:01 CV 404–MU.**

United States District Court, W.D. North Carolina, Charlotte Division.

July 31, 2003.

---

**334**

Kiran H. Mehta, Sara W. Higgins, Kennedy, Covington, Lobdell & Hickman, Charlotte, NC, for plaintiffs.

L. Neal Ellis, Jr., Heather Bell Adams, Hunton & Williams, Raleigh, NC, Bruce A. Rubin, Kathryn Ivers, Miller Nash, L:L.P., Portland, OR, for defendants.

### ORDER

MULLEN, Chief Judge.

**THIS MATTER** is before the Court on cross Motions for Summary Judgement by Plaintiff William Adams ("Adams") and Defendants Louisiana Pacific Corporation ("LPC"), ABT Building Products Corporation ("ABTBPC"), ABTco, Inc. ("ABT"), ABT Building Products Supplemental Benefit Plan # 2 ("Supplemental Plan"), and the Retirement Committee for the ABT Building Products Corporation Supplemental Benefit Plan # 2 ("Retirement Committee"). All responses have been filed and this matter is ripe for resolution.

### I. Background

This case involves a dispute over an interpretation of the terms of a non-quali-fied employee benefit plan subject to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* The plan at issue, the ABT Building Products Supplemental Benefit Plan # 2, is a "SERP," or Supplemental Executive Retirement Plan: A non-qualified "top-hat" plan wherein highly paid executives are entitled to greater severance benefits than other employees, i.e. "golden parachutes." The Supplemental Plan is "self-funded" and "self-administered," which means that plan benefits are paid in cash directly from the general assets of ABT, and decisions regarding benefit eligibility of employees are handled by ABT's own personnel (the Retirement Committee) as opposed to a third party administrator. Section 4.1 of the Supplemental Plan sets forth the formula[1] used to determine a participant's benefits under the plan.

Plaintiff Adams became an ABT employee on October 20, 1992. As an employee he participated in the Retirement Plan, Supplemental Plan, and also received ABT stock options. When ABT merged with LPC on January 19, 1999, the merger agreement provided that holders of options would receive a cash payment in exchange for the surrender of their vested ABT stock options. Adams received cash payments in accordance with this agreement.

As a result of the merger between ABT and LPC, the composition of the Retirement Committee changed from ABT employees to LPC employees.[2] This new Re-

---

1. (a) 2.5% of "Average Compensation" multiplied by "Years of Service" less (b) the participant's Retirement Plan benefits earned for the Years of Service used to determine part (a). "Compensation", used to determine "Average Compensation" is incorporated from terms of the Retirement Plan and may be essentially defined as "the compensation reported as wages on a participant's Form W–2, plus salary deferral contributions to a qualified plan, less any other deferred compensation, reimbursements, fringe benefits, moving expenses..."

2. The ABT Retirement Committee, consisting of Thomas Kelly and Michael Lupo was replaced by LPC employees Russel Pattee, Curtis Stevens, and Michael Tull.

tirement Committee passed a resolution in October 1999 declaring that payments received by Supplemental Plan participants in exchange for vested stock options did not constitute "Compensation" under the terms of the plan. On March 31, 2000 the Retirement Committee sent Adams a copy of a proposed amendment to the Supplemental Plan allowing Adams to exercise a lump-sum benefit option instead of receiving a paid-up annuity at retirement. Attached to the proposed amendment was a calculation of Adams's plan benefits which was inconsistent with his understanding of the terms of the Supplemental Plan.[3] Adams did not sign the consent form agreeing to the proposed amendment.

In a letter dated May 2, 2000 Adams made a claim for benefits under the Supplemental Plan which was much greater than the calculation offered by the Retirement Committee in their March 31st letter. On October 30, 2000 the Retirement Committee issued a letter denying Adams's benefit claims. Adams appealed the decision pursuant to the claims administration procedure specified in the Supplemental Plan in a letter dated December 28, 2000. The Retirement Committee again denied Adams's benefit claims, whereupon Adams filed this lawsuit.

## II. Standard of Review for Summary Judgement Motion

Summary judgement is appropriate when the pleadings, responses to discovery, depositions, and affidavits reveal that no genuine issue of material fact exists and that the moving party is entitled to judgement as a matter of law. FED. R. CIV. P. 56(c). On motion for summary judgment the court reviews the record in a light most favorable to the non moving party. *McWilliams v. Metropolitan Life Ins. Co.*, 172 F.3d 863 (4th Cir.1999).

## III. Standard of Review for denial of benefits under ERISA

As an initial matter the parties are in dispute as to the appropriate standard of review for this ERISA action. Defendants argue that this Court should give deference to the Retirement Committee and only disturb their judgement if they abused their discretion in deciding to deny certain benefits to the Plaintiff. Plaintiff contends however, that the appropriate standard is *de novo* review of the Retirement Committee's decision.

 It is well established that a court reviewing the denial of benefits under ERISA initially must decide whether a benefit plan's language grants the administrator or fiduciary discretion to determine the claimant's eligibility for benefits, and if so, whether the administrator acted within the scope of that discretion. *Firestone Tire & Rubber Company v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). The plan's intention to confer discretion on the plan administrator or fiduciary must be clear. *Gallagher v. Reliance Standard Life Insurance Company*, 305 F.3d 264, 269 (4th Cir.2002). If a plan does not clearly grant discretion, the standard of review is *de novo*. *Feder v. Paul Revere Life Ins. Co.*, 228 F.3d 518, 524 (4th Cir.2000).

 Section 5.1 of the Supplemental Plan is clear and unambiguous when it states that the Retirement Committee is to have, "full discretionary authority to determine an individual's eligibility for bene-

---

**3.** Adams asserts that the Retirement Committee made three errors in its calculation of monthly retirement benefits due: (1) Proceeds from the exercise of stock options should not have been excluded from Compensation, (2) Plan benefits should not have been actuarially reduced for early retirement, and (3) Service credit should have been given for the year 2000 as a partial year. Each of these arguments is considered, *infra*.

fits and the amount of benefits payable hereunder and to otherwise interpret and administer the Plan." Given this clear statement granting discretion to the plan administrator, this Court finds as a rebuttable presumption that the appropriate standard to be applied is a deferential review only for abuse of discretion. Under this standard an administrator's decision will not be disturbed if it is the result of a principled, deliberate reasoning process and is supported by substantial evidence. *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 605 (4th Cir.1999); *Brogan v. Holland*, 105 F.3d 158, 161 (4th Cir.1997). However the deference paid by the court to the decision of the administrator may be reduced where the administrator or fiduciary has a conflict of interest. *Id.* This modified abuse of discretion standard allows the court to reduce the amount of deference normally given to the degree necessary to neutralize any untoward influence resulting from the conflict. *Gallagher*, 305 F.3d at 269 citing *Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 233 (4th Cir.1997).

Instead of this modified abuse of discretion standard, Plaintiff cites *Goldstein v. Johnson & Johnson*, 251 F.3d 433, 442 (3d Cir.2001) for the proposition that the appropriate standard of review for this motion is *de novo*. In *Goldstein*, the Third Circuit reasoned that the modified abuse of discretion standard created in *Firestone* was based upon an analogy to trust law,

and that such an analogy does not apply to top-hat plans, as in the instant case. Instead, the Third Circuit held that tophats are more analogous to plans where an administrator has no discretion to interpret the terms at all, in which case a *de novo* standard should be applied as in the federal common law of contract. *Goldstein*, 251 F.3d at 442–3. Plaintiff argues that this Court should follow the *Goldstein* rationale because no Fourth Circuit decision has undertaken a similarly detailed analysis of the proper standard of review under a top-hat plan.

■ The Supreme Court in *Firestone* concluded that due to the reasoning behind its holding, "we need not distinguish between types of plans or focus on the motivations of plan administrators and fiduciaries." *Firestone*, 489 U.S. at 115, 109 S.Ct. 948. Moreover, other courts have applied a modified abuse of discretion standard to top-hat plans. *See Olander v. Bucyrus–Erie Co.*, 187 F.3d 599, 604 (7th Cir.1999) (applying *Firestone* analysis to top-hat plan); *Schikore v. Bankamerica Supplemental Ret. Plan*, No. C 98 –3857 SI, 1999 WL 605826 (N.D.Cal. Aug. 2, 1999). This Court sees no reason to stray from the guidelines presented by the Supreme Court in *Firestone*, and consistently confirmed by the Fourth Circuit.[4] Therefore for reasons stated *supra*, this Court holds that a modified abuse of discretion standard of review is appropriate. The Court now considers the degree of defer-

---

4. *See Rego v. Westvaco Corp.*, 319 F.3d 140 (4th Cir.2003); *Jones v. UNUM Life Ins. Co. of Am.*, 57 Fed. Appx.159, 2003 WL 264701 (4th Cir.2003); *Carrigan v. Reliance Std. Life Ins. Co.*, 55 Fed.Appx. 630, 2003 WL 132981 (4th Cir.2003); *Hensley v. Eastman–Long Term Disability Plan*, 53 Fed.Appx. 285 (4th Cir. 2002); *Carr v. Philips Elecs. N. Am. Corp.*, 41 Fed.Appx. 637 (4th Cir.2002); *Rogers v. Am. Elec. Power Serv. Corp.*, 39 Fed.Appx. 926 (4th Cir.2002); *Meredith v. Mamsi Ins. Res., Inc.*, 36 Fed.Appx. 109 (4th Cir.2002); *Webster v. Black & Decker (U.S.) Inc.*, 33 Fed.Appx. 69 (4th Cir.2002); *Cottrell v. CSX Transp., Inc.*, 32 Fed.Appx. 88 (4th Cir.2002); *Hung v. Guardian Life Ins. Co. of Am.*, 28 Fed.Appx. 268 (4th Cir.2002); *Tumbleston v. A.O. Smith Corp.*, 28 Fed.Appx. 231 (4th Cir.2002); *Myers v. Hercules, Inc.*, 253 F.3d 761 (4th Cir.2001); *Holder v. Woodmen of the World/Omaha*, 11 Fed.Appx. 103 (4th Cir.2001); *Balthis v. AIG Life Ins. Co.*, 5 Fed.Appx. 320, 5 Fed.Appx. 320 (4th Cir.2001); *Dwyer v. Metro. Life Ins. Co.*, 4 Fed.Appx. 133, 2001 WL 94749 (4th Cir.2001).

ence that must be given to the administrator's decision.

## III. Conflict of Interest

■ Although there is no per se conflict of interest when fiduciaries have ties to a plan's contributor, *Bidwill v. Garvey*, 943 F.2d 498, 508 (4th Cir.1991), *cert. denied*, 502 U.S. 1099, 112 S.Ct. 1182, 117 L.Ed.2d 425 (1992); *Bill Gray Enterprises v. Gourley*, 248 F.3d 206 (3d Cir.2001) (holding that a conflict of interest does not exist just because a benefit plan is self-funded or self-administered), the Fourth Circuit has acknowledged that a self-funded or self-administered plan has the potential to create a conflict of interest. *Booth v. Wal–Mart Stores, Inc.*, 201 F.3d 335, 343 (4th Cir.2000); *Holder v. Woodmen of the World/Omaha Woodmen Life Ins. Soc. Long Term Disability Plan for Field Associates*, 11 Fed.Appx. 103, 105, 2001 WL 369680 (4th Cir.2001); *Hickey v. Digital Equipment Corp.*, 43 F.3d 941, 946–7 (4th Cir.1995).

■ This potential for conflict does not require federal courts to perfunctorily delay ruling on motions for summary judgement under an abuse of discretion standard solely to confirm the degree of such a conflict. *See Spangler v. Unum Life Ins. Co. of Am.*, 38 F.Supp.2d 952, 955 (N.D.Okla.1999) (rejecting plaintiffs' argu-

ment that additional discovery on the issue of conflict of interest was necessary for court to determine how far to "slide the scale" against deference to the plan administrator); *see also Farley v. Arkansas Blue Cross & Blue Shield*, 147 F.3d 774, 776 (8th Cir.1998) (noting that because conflict of interest will normally be apparent on the face of the administrative record, additional discovery beyond administrative record is rarely necessary).

■ However in the interest of justice this Court, by order dated April 25, 2002, compelled defendants to provide answers to interrogatories 2, 6, 10, 11, 12, and 13 on the basis that they may lead to the discovery of admissible evidence regarding a potential conflict of interest under which the defendants' operated in the consideration of plaintiff's benefit claims. The result of this discovery[5] merely confirms that the plan was self-funded and self-administered, and hence does not disturb the reasoning of this Court in Part II, *supra*, wherein it was decided that this Court will apply a modified abuse of discretion standard. Under this standard the potential for a conflict of interest will be weighed as one among eight factors presented by the Fourth Circuit to be considered in a determination of "reasonableness" on the part of the plan administrator in reaching its decision.[6]

---

**5.** Discovery findings included, *inter alia:* (1) The Retirement Committee which considered benefits claims was comprised of three members (Russel Pattee, Curtis Stevens, and Michael Tull), two of which worked in the finance area of LPC, (2) LPC had incurred significant losses in the years prior to the instant claim, and (3) the Retirement Committee knew that its decision regarding the benefits paid to the Plaintiff would have a significant effect on LPC's total Supplemental Plan liability.

**6.** The Fourth Circuit has held that in determining the reasonableness of a fiduciary's discretionary decision, this Court should consid-

er such factors as: (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision-making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have. *Booth v. Wal–Mart Stores, Inc.*, 201 F.3d 335, 342–43 (4th Cir.2000).

### III. Stock Option Income: Compensation vs. Fringe Benefit

■ This Court considers first whether the Retirement Committee reasonably excluded Plaintiff's W–2 taxable income realized from the exercise of ABT stock options in 1998 and 1999 from the term "Compensation," which is used to determine one's "Average Compensation" under the Supplemental Plan. Average Compensation is subsequently used to calculate total benefits due under the Retirement and Supplemental Plans. Hence, the inclusion or exclusion of stock option proceeds in Compensation materially affects the amount of benefits due to a plan participant. This inquiry therefore must be focused upon whether, under the terms of the Supplemental Plan, proceeds from the exercise of stock options are correctly categorized as Compensation, or whether they should be considered "fringe benefits."

Sections 5.1 and 4.1 of the Supplemental Plan define Compensation included in Average Compensation as the compensation reported as wages on participant's Form W–2 excluding fringe benefits. In support of their differing arguments both Plaintiff and Defendants rely on authority from the IRS. The Retirement Committee relied, in its deliberations, on IRS Publication 15–B, "Employer's Tax Guide to Fringe Benefits," which specifically discusses stock option income under a section entitled "Fringe Benefit Exclusion Rules." For his argument, Plaintiff urges that Section 61(a) of the Internal Revenue Code, "expansively defines gross income to include all income received by a taxpayer, including specifically 'fringe benefits'." (Plain. Mem. in Opp. at p. 10).

A plain read of the plan language defines compensation first as "wages as listed on participant's Form W–2" ("wages"), modified by the subtraction of fringe benefits. The only two terms in this equation are wages and fringe benefits. The upshot is that since Plaintiff seeks to include stock option proceeds within Compensation, but also seeks to exclude them from fringe benefits, Plaintiff must argue that proceeds from stock option sales are necessarily included within the term "wages as listed on participant's Form W–2." In their Brief in Opposition to Summary Judgement for Defendant, Plaintiff argues *inclusio unius est exclusio alterius,* that stock options do not fit within Section 61(a)'s list of examples of fringe benefits. But this argument merely affirms the consequent [7] in that it fails to explain how stock option proceeds must necessarily be defined within *wages* and thus, how they contribute to the final term of Average Compensation.

Far more persuasive are Plaintiff's arguments in his Brief in Support of Motion for Summary Judgement for Plaintiff. There, Plaintiff cites the deposition of members of the Retirement Committee before the merger of ABT and LPC. These depositions make it clear that the pre-merger Retirement Committee treated proceeds from the exercise of stock options as W–2 wages, not fringe benefits. Furthermore, it is clear that the post-merger Retirement Committee at the very least had some knowledge of this prior practice because they specifically passed a resolution in October of 1999 to exclude stock option proceeds from Compensation. Since the Retirement Committee relied principally upon the October 1999 Resolution in its calculation of benefits due to Adams, this

---

7. Fallacy of Affirming the Consequent:

$A \to {\sim}B$ (If X is a wage, then X is not a fringe benefit)

${\sim}B$ (X is not a fringe benefit)

$\therefore A$ (X is a wage) [FALLACY]

Court must determine whether the Retirement Committee acted within its discretion in passing the October 1999 Resolution.

■ The Fourth Circuit requires no judicial deference to an administrative decision where that decision is contrary to plain plan language. *Davis v. Burlington Indus.*, 966 F.2d 890, 895 (4th Cir.1992); *de Nobel v. Vitro Corp.*, 885 F.2d 1180, 1188 (4th Cir.1989). The plain language of the Supplemental Plan § 7.2 titled "Amendment and Termination" states that, *"The provisions of the plan may not be amended or terminated with respect to a participant following a change in control* (as defined in Section 7.3 [8]) *without written consent of the participant.* (emphasis added)." The merger of ABT and LPC on January 19, 1999 constituted a change of control under Section 7.3.[9] Any amendments to the Supplemental Plan after the date of merger, including the October 1999 Resolution, were therefore subject to the scrutiny of Section 7.2, which required written consent of participants.

The Retirement Committee did not obtain adequate consent to amend the Supplemental Plan as required by Section 7.2. While it is true that the post-merger Retirement Committee sent a letter to Adams on March 31, 2000 requesting his consent to modify the terms of the Supplemental Plan, that request for consent is unpersuasive for two reasons. First, the request for consent was inapposite to a determination of the treatment of income resulting from stock option exercises. Instead, the letter pertained to an amendment which would have allowed Adams to take a lump-sum payment of benefits instead of a paid-up annuity. A second reason that the request for consent was ineffective is, quite simply, because Adams never signed the consent form. On the contrary, Adams rejected the calculations which accompanied the consent form and submitted differing calculations. Therefore the Retirement Committee abused its discretion by making an unauthorized amendment to the Supplemental Plan.

As a direct and proximate result of this abuse of discretion, the Retirement Committee erred in its application of the plan language for calculation of benefits due to Adams under the Supplemental Plan. As noted *supra*, a plain read of the plan language reveals that a claimants Form W–2 wages are to be used in calculating retirement benefits. In its calculation, the Retirement Committee used $205,639.47 for 1998, and $225,981.99 for 1999. However Plaintiff's wages as reported on his Form W–2 for 1998 and 1999 were, respectively, $391,211 and $1,095,066. An application of the plan language to the calculations actually made by the Retirement Committee reveals that the administrator abused its discretion in denying Adams a benefit calculation which incorporated all of his Form W–2 wages. This Court, therefore, finds that Plaintiff Adams is entitled to a recalculation of his benefits using all of his 1998 and 1999 income as represented on his Form W–2 for those years.

---

8. "For the purposes of Section 7.3 a 'change of control' shall be deemed to have occurred if and when (a) any person... is or becomes a beneficial owner, directly or indirectly, of securities of the Company representing 25% or more of the combined voting power of the Company's then outstanding securities, or (b) during any period of 24 consecutive months, commencing before or after the date of the 'change of control,' individuals who at the beginning of such 24 month period were directors of the Company cease for any reason to constitute at least a majority of the Board of Directors of the Company."

9. Page one of the Agreement and Plan of Merger between ABT and LPC states that, "To effectuate the acquisition, Parent and Company each desire that parent cause Merger Sub to commence a cash tender offer to purchase all of the outstanding shares of common stock, par value $0.01 per share..."

## IV. Actuarial Reduction

Next the Court considers Plaintiff's claim that the Retirement Committee's calculation of benefits due to Adams included an actuarial reduction for early retirement in violation of the Supplemental Plan. While in Part III *supra,* the Court concluded that the Retirement Committee deviated from clear plan language when it excluded stock option proceeds from its benefit calculation, both parties agree that there is no such clear language to dispute in the instance of the actuarial reduction. Hence this inquiry will focus only upon whether the Retirement Committee's inclusion of an actuarial reduction for early retirement was a reasonable interpretation of the terms of the Supplemental Plan in light the administrative record as presented to the court.

As noted *supra,* the Supplemental Plan states that the plan may not be amended or terminated with respect to a participant following a change of control without the written consent of the participant. Since the pre-merger Board of Directors could therefore freely amend the plan, this Court looks to any amendments in the administrative record which would have affected an actuarial reduction in a participant's benefits resulting from early retirement. In Section 4.2 of the Supplemental Plan, titled "Time and Method of Payment," the plan states:

> The benefits payable under Section 4.1 shall be payable as of the participant's normal, early or deferred retirement date, whichever is applicable...,

However in July of 1995 ABT's Board of Directors adopted an amendment to the plan which replaced the above sentence of Section 4.2 with the following text:

> The benefits payable under Section 4.1 *shall be paid on an unreduced basis* beginning as of the participant's normal, early or deferred retirement date, whichever is applicable... (emphasis added).

Without appealing to any text in the administrative record Defendants contend that in September 1995, this same Board of Directors adopted a resolution approving an amendment of the Supplemental Plan which *did not include the provision* adopted in July. Hence, Defendants contend that since there was no clear statement regarding an actuarial reduction before July 1995, the alleged adoption of an amendment in September of 1995 removed the possibility that the plan provided for an unreduced early retirement benefit.

Section 1102(a)(1) of ERISA requires that "Every employee benefit plan shall be established and *maintained pursuant to a written instrument.*" (emphasis added). In the words of the key congressional report, "[a] written plan is to be required in order that every employee may, on examining the plan documents, determine exactly what his rights and obligations are under the plan." *Curtiss–Wright Corp. v. Schoonejongen,* 514 U.S. 73, 83, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995) citing H.R.Rep. No. 93–1280, p. 297 (1974) U.S.Code Cong. & Admin. News pp. 4639, 5077, 5078. The Fourth Circuit has noted the importance of giving weight to the written terms of the ERISA plan document. *See Biggers v. Wittek Industries, Inc.,* 4 F.3d 291 (4th Cir.1993); *Gable v. Sweetheart Cup Co., Inc.,* 35 F.3d 851 (4th Cir.1994). Indeed, ERISA precludes the enforcement of oral modifications to written employee benefit plans. *Degan v. Ford Motor Co.,* 869 F.2d 889 (5th Cir.1989); *Cefalu v. B.F. Goodrich Co.,* 871 F.2d 1290 (5th Cir.1989); *Musto v. American General Corp.,* 861 F.2d 897 (6th Cir.1988), *cert. denied,* 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989); *Nachwalter v. Christie,* 805 F.2d 956 (11th Cir.1986). Furthermore, ERISA's Section

1021(b)(1) "reporting and disclosure" requirements mandate that an administrator must furnish beneficiaries with summaries of new amendments no later than 210 days after the end of the plan year in which the amendment is adopted.

■ This Court must view the reasonableness of the Retirement Committee's interpretation of the Supplemental Plan based upon the administrative record before the court. *See Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co.*, 32 F.3d 120, 126 (4th Cir.1994); *Berry v. Ciba–Geigy Corp.*, 761 F.2d 1003, 1007 (4th Cir. 1985). There is nothing in the administrative record to support Defendants' assertion that a written September 1995 amendment ever existed, or that it was made available to the Plaintiff in such a way that he could understand his rights under the plan. All other amendments or resolutions in the record are clearly written, signed, and dated by either the ABT Board of Directors or the Retirement Committee respectively. Without a copy of the written September 1995 amendment this Court has no way of reading the language of the plan to determine whether the *exclusion* of an *unreduced benefit* was a reasonable interpretation by the post-merger Retirement Committee.

Given the potential for conflict of interest by the Supplemental Plan's post-merger Retirement Committee and the clear insufficiency of the administrative record to support an interpretation of the plan providing for an actuarially reduced benefit, this Court defers to the language which *is* available in the administrative record. That language, as provided in the July 1995 amendment, states that the benefits payable under the plan shall be paid on an *unreduced* basis. The Retirement Committee's inclusion of an actuarial reduction for early retirement is therefore in direct conflict with the clear plan language. As previously noted, the Fourth Circuit requires no judicial deference to an administrative decision where that decision is contrary to plain plan language. *Davis v. Burlington Indus.*, 966 F.2d 890, 895 (4th Cir.1992); *de Nobel v. Vitro Corp.*, 885 F.2d 1180, 1188 (4th Cir.1989). This Court, therefore, finds that Plaintiff Adams is entitled to a recalculation of his benefits without the inclusion of an actuarial reduction for early retirement.

## V. Partial Year Rule

■ Finally, the Court considers Plaintiff's claim that his year 2000 income should have been included for purposes of calculating his benefits due under the Supplemental Plan. The point of dispute on this issue is the effect that the Retirement Committee gave to a "partial year rule" when calculating Average Compensation to determine benefits due to the Plaintiff. As with the foregoing inquiries the Court turns its attention first to the clear plan language as presented to the court in the administrative record.

Section 5.1 of the ABT Retirement Plan contains the definition of Average Compensation, which is incorporated into the Supplemental Plan by reference. It states that:

> "Average compensation" means the average compensation of an employee during the period of those five consecutive complete calendar years prior to the participant's employment termination which would produce the highest such average as to him, *provided that if a participant's compensation received during the calendar year in which his or her employment terminates is greater than the compensation received during the final complete year of employment, such final partial calendar year shall be treated as a complete calendar year in calculating the participant's average compensation.* (emphasis added).

The italicized portion of this definition is the disputed "partial year rule."

The Retirement Committee interpreted this rule to mean that, "a participant's final year of compensation counts as a complete year and is included in the benefit calculation only if that partial year compensation is greater than the participant's final complete year compensation... Because Mr. Adams [sic] 2000 partial year compensation is not greater than his 1999 compensation, the partial year rule does not affect his [Supplemental Plan] benefits." The Retirement Committee therefore excluded Plaintiff's 2000 income and considered the five consecutive years ending in 1999 in its Average Compensation calculation.

Plaintiff argues however, that more emphasis should have been placed upon the part of the Average Compensation definition that states that the calculation should yield a result that "would produce the highest such average as to [the Plaintiff]." In other words, Plaintiff claims that a proper calculation of benefits would have been made by determining whether Plaintiff's 2000 compensation was higher than his 1995 compensation (as opposed to 1999 compensation). Since Plaintiff's 2000 compensation was greater than his 1995 compensation, Plaintiff argues that his year 2000 income should have been included in Average Compensation, thereby yielding a higher benefit calculation for the Plaintiff.

This Court finds no ambiguity in the language of the Average Compensation formula: (1) If the participant's final partial year compensation exceeds the previous full year of compensation, then the final partial year is treated as a full year. (2) After this determination is made, the administrator takes the highest average of any of the participant's five consecutive and complete years of work (including a final partial year if that year meets the criteria in (1)), and uses that highest average to calculate benefits due. This was the interpretation of Average Compensation as applied by the Retirement Committee to the Plaintiff's benefit calculation. This Court finds that such an interpretation is entirely reasonable.

 As previously noted, where a fiduciary has provided a reasonable interpretation of the disputed provisions of a plan, this Court may not replace it with its own interpretation. *Booth v. Wal–Mart Stores, Inc.,* 201 F.3d 335, 344 (4th Cir.2000); *United McGill Corp. v. Stinnett,* 154 F.3d 168, 170–1 (4th Cir.1998); *Lockhart v. United Mine Workers of Am.1974 Pension Trust,* 5 F.3d 74, 77 (4th Cir.1993). Given this settled law, even if this Court were to agree with Plaintiff's interpretation of Average Compensation, which it does not, it is still bound to accept the Retirement Committee's calculation as it is reasonable based upon the plain language of the plan. Therefore Plaintiff is not entitled to a recalculation of his benefits which incorporates his year 2000 earnings into Average Compensation.

**THEREFORE IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgement is **DENIED** with respect to Parts III (Stock Option Income) and IV (Actuarial Reduction), and **GRANTED** with respect to Part V (Partial Year Rule).

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgement is **GRANTED** with respect to Parts III (Stock Option Income) and IV (Actuarial Reduction), and **DENIED** with respect to Part V (Partial Year Rule).